**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

AMANDA MORETTINI,

          Plaintiff,

v.

THE PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

          Defendants.

Case No. 25-cv-5041

Judge Lindsay C. Jenkins

Magistrate Judge Jeffrey T. Gilbert

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S SECOND EX PARTE MOTION FOR
ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY
INJUNCTION, A TEMPORARY LIMITED ASSET RESTRAINT, AND EXPEDITED
DISCOVERY**

       Plaintiff has filed this copyright infringement action against the defendants identified on

Schedule A to the Amended Complaint ("Defendants") based on Defendants' unauthorized

reproduction, public display, and distribution of Plaintiff's copyrights. Plaintiff submits this

Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order

("TRO"), including a temporary injunction and a temporary, limited asset restraint, and for

expedited discovery (the "*Ex Parte* Motion").

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

       Plaintiff is requesting temporary *ex parte* relief based on an action for copyright

infringement against the Defendants. As alleged in Plaintiff's Amended Complaint, Defendants

manufacture, list for sale, sell, and/or ship products identical or substantially similar products

embodying Plaintiff's Copyrights (defined below), or substantially similar versions thereof (the

"Infringing Products") which are marketed and sold by Defendants with product listings that also

feature infringing versions of Plaintiff's Copyrights. Defendants market, sell, and distribute the

Infringing Products through various fully interactive, commercial Internet stores operating under at least the Online Marketplace Accounts listed in Schedule A to the Amended Complaint (collectively, the "Defendant Internet Stores").

Each Defendant in this action runs a sophisticated operation and is reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Internet Stores, through which Illinois residents can purchase the Infringing Products. The Defendant Internet Stores share unique identifiers establishing a logical relationship between them. Further, Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their operations. Plaintiff is forced to file this action to combat Defendants' continued willful infringement of Plaintiff's Copyrights. Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue *ex parte* a Temporary Restraining Order.

## II.     STATEMENT OF FACTS

### A.     Plaintiff's Products and Copyrights

Plaintiff designs, manufactures, and sells high-quality pottery and artwork, such as the "Paw Print Ocean Shoreline" mug depicting one of Plaintiff's copyrights (Reg No. VA 2-430-423) (the "Paw Print Copyright") at issue in this case ("Plaintiff's Product"), which Plaintiff markets and sells using various copyright protected marketing materials (Reg Nos. VA 2-426-003 and Pau 4-246-622) (the "Marketing Materials") (the Paw Print Copyright and Marketing Materials collectively referred to herein as "Plaintiff's Copyrights"). Am. Compl. at ¶ 3. Since first introducing Plaintiff's Product in 2021, Plaintiff has sold thousands of units of Plaintiff's Product annually, generating Plaintiff an average of $55,000 in annual revenue from sales through

Plaintiff's own website (amandapaintsandpots.com) and Etsy store (etsy.com/shop/AmandaPaintsandPots). Am. Compl. at ¶ 8.

The Certificates of Registration for Plaintiff's Copyrights and examples of the corresponding image are attached as Exhibit 1 of the Amended Complaint and Declaration of Amanda Morettini ("Morettini Decl."). Among the exclusive rights granted to Plaintiff under the U.S. Copyright Act for Plaintiff's Copyrights is the exclusive right to reproduce, publicly display, and distribute Plaintiff's Copyrights to the public. Am. Compl. at ¶ 11.

### B. Defendants' Unlawful Activities

The marketplace success of Plaintiff's Product has resulted in significant infringement of Plaintiff's Copyrights. Am. Compl. at ¶ 14. Consequently, Plaintiff maintains an anti-infringement program and investigates suspicious e-commerce stores identified in proactive Internet sweeps. *Id*. Plaintiff has identified numerous fully interactive e-commerce stores, including those operating the Defendant Internet Stores, which were offering for sale and/or selling the Infringing Products to consumers in this Judicial District and throughout the United States which are also marketed and sold with product listings that feature infringing versions of Plaintiff's Copyright. Am. Compl. at ¶ 12, Exhibit 2; Morettini Decl. at ¶ 8, Exhibit 3. Additionally, products for sale by the Defendant Internet Stores bear similar irregularities and indicia of being related to one another, suggesting that the products were manufactured by and come from common sources and that Defendants are interrelated. Am. Compl. at ¶¶ 4, 13, 18.

### C. Jurisdiction

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Copyright Act, 17 U.S.C. § 101 *et seq.*, and 28 U.S.C. §§ 1338(a) and 1331. Am. Compl. at ¶ 1. Venue is proper pursuant to 28 U.S.C. § 1391. Am. Compl. at ¶ 2. This

Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive Defendant Internet Stores. Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more seller aliases through which Illinois residents can purchase their Infringing Products. Am. Compl. at ¶¶ 2, 12, 20, Exhibit 2; Morettini Decl. at ¶ 8, Exhibit 3. *See, e.g., Christian Dior Couture, S.A. v. Lei Liu et al*., 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendant offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required); *see also Monster Energy Co. v. Zheng Peng*, Case No. 17-cv-414, 2017 WL 47732769, at *7 (N.D. Ill. Oct. 23, 2017). Each of the Defendants is engaging in interstate commerce, committing tortious acts in Illinois, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## III.  ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and the goodwill. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The entry of a TRO is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of Plaintiff's Copyrights and preserve the status quo until a hearing can be held.

In the absence of a TRO without notice, the Defendants can and likely will register new ecommerce stores under new aliases and move any assets to offshore bank accounts outside the jurisdiction of this Court. Courts have recognized that civil actions against such defendants present

special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* TRO.

## A.  Legal Standard Governing Requests for a Temporary Restraining Order.

A party seeking a TRO must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Abbott Labs. V. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.* at 12.

## B.  Plaintiff Will Likely Succeed on the Merits.

Copyright infringement requires proof of "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Janky v. Lake Cnty. Convention & Visitors Bureau*, 576 F.3d 356, 361 (7th Cir. 2009) (internal citation omitted). "Because direct evidence of copying often is unavailable, copying may be inferred where the defendant had access

to the copyrighted work and the accused work is substantially similar to the copyrighted work." *Atari, Inc. v. N. Am. Philips Consumer Elec. Corp.*, 672 F.2d 607, 614, *superseded on other grounds* 722 F.3d 1089 (7th Cir. 1982). In determining whether the works are substantially similar, the Court must consider "whether the accused work is so similar to the plaintiff's work that an Ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value." *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 509 (7th Cir. 1994); *see also Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011 (7th Cir.2007) ("[W]hether the copying, if proven, went so far as to constitute an improper appropriation…leads us to the 'ordinary observer' test." (internal quotation omitted)).

Plaintiff is highly likely to succeed on the merits of its copyright infringement claim. Plaintiff holds valid and subsisting U.S. copyright registrations for Plaintiff's Copyrights. Am. Compl. at ¶¶ 3, 7, Ex. 1. Evidence submitted herewith demonstrates that Defendants have, without authorization, reproduced, publicly displayed, and distributed infringing copies of Plaintiff's Copyrights, both via the sale or offering for sale of the Infringing Products themselves, as well as in the e-commerce store listings therefor. Am. Compl. Ex. 2. The Infringing Products are substantially similar—if not identical—to Plaintiff's Copyrights. Am. Compl. at ¶¶ 3, 12, Exhibit 2. Moreover, Defendants have had access to Plaintiff's Copyrights through Plaintiff's website, Etsy store, and Instagram page. Am. Compl. at ¶¶ 8-9. Based at least on the above, Plaintiff is likely to success on the merits of its claim that Defendants willfully infringe Plaintiff's Copyrights.

**C. There is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary and Emergency Relief.**

The Seventh Circuit has held that irreparable harm is presumed in copyright infringement cases. *Atari*, 672 F.2d at 620. "The stronger the case on the merits, the less irreparable harm must

6

be shown." *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1172 (7th Cir. 1997). Where a copyright owner has expended significant resources promoting products embodying its copyrights and the marketing plan cannot readily be monetized, losses resulting from infringement constitute irreparable harm. *Id.* at 1173. The sort of irreparable harm resulting from copyright infringement also includes damage to the copyright owner's business reputation. *Spinmaster, Ltd. v. Overbreak LLC*, 404 F. Supp. 2d 1097, 1111 (N.D. Ill. 2005). Indeed, in recognition of the irreparable nature of the harm caused by copyright infringement and the aim of the copyright laws to prevent such commercial harm not compensable monetarily, the Copyright Act expressly provides for injunctive relief in order to address infringement. *See* 17 U.S.C. § 502.

Defendants' unauthorized use of the Plaintiff's Copyrights has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputations, loss of exclusivity, and loss of future sales. Morettini Decl. at ¶ 9. Plaintiff has invested substantial time, money, and effort creating Plaintiff's Copyrights and promoting Plaintiff's Product using the Plaintiff's Copyrights. *Id.* at ¶ 10. The extent of the harm to Plaintiff's reputation, the goodwill associated therewith, and the possible diversion of customers due to loss in brand confidence are irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *Id.* at ¶ 11. *See Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law). Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Am. Compl. at ¶ 5; Morettini Decl. at ¶ 12.

**D.      The Balancing of Harms Tips in Plaintiff's Favor, and the Public Interest Is Served by Entry of the Injunction.**

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). Where the plaintiff stands to suffer significantly if a preliminary injunction is not entered due to lost control of its reputation and goodwill, the balance of harms weighs in favor of awarding injunctive relief. *Ty, Inc. v. Jones Group, Inc.*, 98 F. Supp. 2d 988, 993 (N.D. Ill. 2000), *aff'd*, 237 F.3d 891 (7th Cir. 2001).

Defendants have been profiting and continue to profit from the sale of their Infringing Products, the listings of which also infringe Plaintiff's Copyrights. Am. Compl. at ¶ 32; Morettini Decl. at ¶ 13. In so doing, Defendants have eliminated the exclusivity that Plaintiff was entitled to under the Copyright Act. Morettini Decl. at ¶ 14. Thus, the balance of hardships tips decisively in Plaintiff's favor. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

## IV.      THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Copyright Act authorizes courts to issue injunctive relief "on such terms as [they] may deem reasonable to prevent or restrain infringement of a copyright…" 17 U.S.C. § 502.

**A.      A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiff's Copyrighted Marketing Materials is Appropriate.**

Plaintiff requests a temporary injunction requiring the Defendants to immediately cease all use of the Plaintiff's Copyrights, including on or in connection with all Defendant Internet Stores.

8

Such relief is necessary to stop the ongoing harm to Plaintiff and to the goodwill attached to the Plaintiff's Copyrights, and to prevent the Defendants from continuing to benefit from their unauthorized use of the Plaintiff's Copyrights. The need for *ex parte* relief is magnified in today's global economy where infringers like Defendants can operate anonymously over the Internet. Plaintiff is currently unaware of the scope and volume of Defendants' operations, nor how many other Defendant Internet Stores are used to sell and distribute the Infringing Products, including through listings that feature infringe copies or versions of Plaintiff's Copyrights. Courts ordinarily authorize immediate injunctive relief in cases involving the unauthorized use of another's intellectual property. *See, e.g.*, *Entm't One UK Ltd. v. 2012Shiliang*, 384 F. Supp. 3d 941, 947 (N.D. Ill. 2019); *see also Sugartown Worldwide LLC v. The Partnerships and Unincorporated Assocs. Identified on Schedule A*, Case No. 20-cv-5183 (MSS), D.I. 70 (Sept. 18, 2020) (TRO Order).

### B. Preventing the Fraudulent Transfer of Assets is Appropriate.

Plaintiff requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of the Infringing Products, and/or through listings which infringe Plaintiff's Copyrights, is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants will be in a position to disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered which will render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *See Grupo Mexicano*, 527 U.S. at 325 (holding that asset freeze pending outcome of case is proper where plaintiff seeks equitable relief); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) ("[S]ince the assets in question…were the profits of the

[defendants] made by unlawfully stealing [the plaintiff's] services, the freeze was appropriate and may remain in place pending final disposition of this case."). In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of their copyright infringement claim, so according to the Copyright Act, 17 U.S.C. § 504(b), Plaintiff is entitled, "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve relief sought by Plaintiff. *Banister v. Firestone*, No. 17 C 8940, 2018 WL 4224444, at *9 (N.D. Ill. Sept. 5, 2018) (citing *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 13 C 07621, 2013 WL 12314399, at *2 (N.D. Ill. Oct. 31, 2013)).

Plaintiff has shown a strong likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to other unidentifiable or offshore bank accounts. Accordingly, an asset restraint is proper, provided that any such asset restraint as to each Defendant in any temporary restraining order entered by the Court granting Plaintiff's Motion should be limited to the greater of either (1) $1,000, or (2) an amount equal to the total revenue Defendant received from the sale of the Counterfeit/Infringing Products based on the total number of sales of such goods as disclosed by the applicable e-commerce platform. Such limited restraints, in conjunction with the surety bond to be deposited by Plaintiff, should adequately address any concerns with over-restraint the Court may have. *See e.g., Wham-O Holding v. The Partnerships*, 24 CV 12523, Dkt. 39 (N.D. Ill. Feb. 20, 2025).

**V.      Plaintiff is Entitled to Expedited Discovery.**

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld,* No. 1:06-cv-06964, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380 (1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Further, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

Plaintiff respectfully requests expedited discovery to discover bank and payment system accounts that Defendants use for their infringing sales operations, as well as the IP addresses Defendants use to login and access their stores and accounts. The expedited discovery requested in Plaintiff's Proposed TRO is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts and account users so that the proper Defendants can be discovered and their accounts frozen is necessary to ensure that these activities will be contained and constitutes good cause. *See, e.g.*, *Deckers Outdoor Corporation v. The Partnerships, et al*., No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). Plaintiff's seizure and asset restraint may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

**VI.      CONCLUSION**

Defendants' infringement of Plaintiff's Copyrights is impinging upon the exclusivity that Plaintiff is entitled to under the Copyright Act. Defendants' operations are irreparably harming Plaintiff's business, its business reputation, and its marketplace goodwill. Without entry of the requested relief, Defendants' sale of the Infringing Products with listings that infringe Plaintiff's

11

Copyrights will continue to irreparably harm Plaintiff in ways not compensable monetarily. Entry of an *ex parte* order is necessary. Plaintiff respectfully requests that this Court enter a Temporary Restraining Order enjoining Defendants' reproduction, public display, and distribution of Plaintiff's Copyrights and all other activity by Defendants that would constitute an infringement of Plaintiff's copyrights asserted in this action.

Dated: May 19, 2025

Respectfully submitted,

/s/Brandon Beymer
BRANDON BEYMER (ARDC NO. 6332454)
DALIAH SAPER (ARDC NO. 6283932)
SAPER LAW OFFICES, LLC
505 N. LASALLE, SUITE 350
CHICAGO, ILLINOIS 60654
(312) 527-4100
BRANDON@SAPERLAW.COM
DS@SAPERLAW.COM
ATTORNEYS FOR PLAINTIFF